**R.W. INTERNATIONAL CORP. and T. H. Ward de la Cruz, Inc., Plaintiffs, Appellants,**

v.

**WELCH FOODS, INC. and Magna Trading Corp., Defendants, Appellees.**

No. 91–1058.

United States Court of Appeals, First Circuit.

Heard May 7, 1991.

Decided June 21, 1991.

Rehearing and Rehearing en banc Denied July 29, 1991.

Jose A. Hernandez Mayoral, with whom Rafael Hernandez Mayoral was on brief, for plaintiffs, appellants.

Ana Matilde Nin, with whom Samuel T. Cespedes, Jaime E. Toro–Monserrate, and McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria were on brief for defendant, appellee Welch Foods, Inc.

Jorge I. Peirats, with whom O'Neill & Borges was on brief, for defendant, appellee Magna Trading Corp.

Before SELYA and CYR, Circuit Judges, and BOWNES, Senior Circuit Judge.

SELYA, Circuit Judge.

Understandably frustrated by the plaintiffs' coyness in the course of pretrial discovery, the district court invoked Fed.R. Civ.P. 37(b)(2) and dismissed this civil action. *R.W. Int'l Corp. v. Welch Foods, Inc.*, 129 F.R.D. 25 (D.P.R.1990) (*RWI I*). Finding, as we do, that the plaintiffs, although conducting themselves in a less than exemplary manner, did not violate any specific order of the court, we reverse.

## I. BACKGROUND

The plaintiffs, R.W. International Corp. and T.H. Ward de la Cruz, Inc., affiliated entities, sued Welch Foods, Inc. (Welch) in the Puerto Rico courts on or about April 5, 1989, alleging unjust termination of a distributorship agreement in violation of the Dealers' Contract Act, P.R. Laws Ann. tit. 10, § 278 et seq. (1976) (Law 75). Noting diversity of citizenship, Welch removed the case to the United States District Court for the District of Puerto Rico under 28 U.S.C. § 1441. Later, the plaintiffs filed an amended complaint adding a further array of claims under federal and state law and joining a second defendant, Magna Trading Corp. (Magna).

There is no need to choreograph the tarantella danced so feverishly by the parties and the district court during the approximate nine month period from removal to dismissal. It suffices to say that the docket was inundated with repeated motions, replies, surreplies, rejoinders, and surrejoinders, all filed without much discernible regard for the advancement of judicial proceedings. From what we can tell, the frenetic display of compulsive behavior is likely attributable to all parties, save perhaps Magna, in roughly equal measure. Because certain episodes are critical for the purposes at hand, we mention them specifically.

1. On April 26, 1989, Thomas Ward, sole shareholder of the plaintiff corporations, refused to attend his duly noticed deposition. Welch thereupon moved for sanctions. The motion was granted under Fed.R.Civ.P. 37(d), which provides,

*inter alia,* for monetary sanctions if "an officer, director, or managing agent of a party ... fails ... to appear" for a duly noticed deposition. The plaintiffs were fined $3,000.

2. On August 25, 1989, Judge Perez–Gimenez recused himself. The case was reassigned to Judge Pieras.

3. On October 27, 1989, Judge Pieras convened a scheduling conference pursuant to Fed.R.Civ.P. 16(b). At that session, the district court ordered the plaintiffs, *inter alia,* to produce on or before November 16 all documents regarding their claimed damages under Law 75. A deposition schedule was set in place.

4. On November 8, 1989, the district court, in order to facilitate the taking of depositions, accelerated the due date for document production, moving it from November 16 to November 13.

5. On November 14, 1989, Welch moved for dismissal. It grounded the motion on the plaintiffs' failure to produce certain documents regarding damages, most notably, financial statements and tax returns for Impex Trading Corp. (Impex), a non-party corporation wholly owned by Ward.

6. On November 15, 1989, Ward was deposed. He refused to answer certain questions that were asked regarding the tax-exempt status of plaintiff R.W. International Corp. Welch promptly supplemented its dismissal motion, citing Ward's recalcitrance at the deposition as a further ground for relief. The plaintiffs objected to these motions. Magna sided with Welch.

7. On January 10, 1990, the district court, finding that the plaintiffs had willfully violated its discovery orders, dismissed the case. In so doing, the court rested the dismissal squarely on Rule 37(b)(2). *RWI I,* 129 F.R.D. at 28–29. Following the district court's declination to reconsider the dismissal, *R.W. Int'l Corp. v. Welch Foods, Inc.,* 133 F.R.D. 8, 11–12 (D.P.R.1990) (*RWI II*),[1] the plaintiffs appealed.

## II. ANALYSIS

In the ordinary course of civil litigation, "[t]he choice of sanctions for failing to comply with a court order lies with the district court, and we may not lightly disturb a decision to dismiss." *Velazquez–Rivera v. Sea–Land Service, Inc.,* 920 F.2d 1072, 1075 (1st Cir.1990). Yet, this is not the ordinary case; the question here is not whether the court abused its discretion in imposing a particular sanction, but whether the court, under the applicable rules and the circumstances obtaining, had the authority to impose the sanction.

█ We start our discourse by parsing the rule that the district court specifically identified as the source of its authority:

If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

....

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismiss-

---

**1.** Initially, the district court imposed monetary sanctions under Fed.R.Civ.P. 11 and 16(f) in addition to dismissing the case under Fed.R. Civ.P. 37(b)(2). *RWI I,* 129 F.R.D. at 29–31. These incremental sanctions related to the plaintiffs' putative failure to conduct a reasonable inquiry into the amount of the alleged damages before filing the complaint, *id.* at 29, their putative failure "to be substantially prepared for the [initial scheduling conference]," *id.* at 31, and their perceived violation of the order which emerged from that conference, *id.* These sanctions were not quantified at the time, but the court indicated that they would equal "defendants' reasonable expenses, costs and at-

torney's fees incurred to date since the filing of the complaint." *Id.* at 32. The defendants were ordered to file, by January 23, 1990, information from which the court could quantify the monetary sanctions. *See id.* They did not do so. On plaintiffs' motion to reconsider, the district court vacated the monetary sanctions, primarily on the ground that the defendants had not submitted the required data. The court concluded that "[i]t would ... be unjust to award attorney fees and costs when the plaintiffs were not allowed to make an informed opposition to the request for attorney's fees and costs." *RWI II,* 133 F.R.D. at 12.

ing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.... Fed.R.Civ.P. 37(b)(2)(C). The rule's language clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before the enumerated sanctions can be imposed. The decided cases, and the commentators, are consentient in the view that Rule 37(b)(2)'s plain language means exactly what it says. *See, e.g., Badalamenti v. Dunham's, Inc.* 896 F.2d 1359, 1362 (Fed.Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 142, 112 L.Ed.2d 109 (1990); *Salahuddin v. Harris,* 782 F.2d 1127, 1131 (2d Cir.1986); *Laclede Gas Co. v. G. W. Warnecke Corp.,* 604 F.2d 561, 565 (8th Cir.1979); 4A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 37.03[2], at 37–62 to 37–64 (2d ed. 1991); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2289, at 790 (1970). In this case, therefore, the propriety of dismissing plaintiffs' complaint under Rule 37(b)(2) hinges on the answer to the following question: Did either Ward's refusal to answer the tax exemption questions during his deposition or the plaintiffs' failure to produce the Impex documents transgress "an order to provide or permit discovery," Fed.R.Civ.P. 37(b)(2), then in effect? We analyze each episode separately.

### A. *Deposition Testimony.*

■ Should a deponent, though answering many questions at a duly noticed deposition, refuse to answer certain specific questions, the examiner is not remediless.[2] *See* Fed.R.Civ.P. 37(a)(2) ("If a deponent fails to answer a question propounded ..., the discovering party may move for an order compelling an answer.... [and] the proponent of the question may complete or adjourn the examination before applying for an order."). If the court thereafter finds that the refusal was not "substantial-

ly justified," the examiner will receive the amount of "the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees." Fed.R.Civ.P. 37(a)(4). The taxonomy of Rule 37 is progressive. If an order to answer is issued under Rule 37(a), and then disobeyed, Rule 37(b)(2) comes into play, authorizing the trial court to impose further sanctions, including the ultimate sanction of dismissal.

■ In this instance, the initial hurdle was never cleared. Although Ward's deposition was included within the discovery timetable set forth in the scheduling order, that order was not violated. Ward appeared for his deposition on November 15 as scheduled. When he refused to answer the questions concerning tax-exempt status, no Rule 37(a) order to compel answers to those questions was extant. Instead of following the protocol limned in Rule 37, that is, adjourning the deposition and seeking an order to compel Ward to respond to the questions and to pay the expenses ancillary thereto, Welch's counsel elected to bypass Rule 37(a) and seek immediate dismissal of the suit. In the circumstances at bar, that was tantamount to a ball player sprinting from second base to home plate, without bothering to round, let alone touch, third base. Under such circumstances, the district court's premature resort to Rule 37(b)(2) cannot be upheld. *Accord Salahuddin,* 782 F.2d at 1131–32.

■ The appellees make two arguments in an effort to repair the damage done by their rush to judgment. They point out, first, that Ward had been forewarned of possible dismissal because he had previously been sanctioned for failing to attend a deposition. We find wholly disingenuous the claim that this circumstance somehow relieved the court from following the step-by-step progression delineated in Rule 37 and, in the bargain, nullified the express command of Rule 37(b)(2). Having once

---

2. Refusing to answer specific questions is, of course, to be distinguished from failing to attend the deposition—a situation covered by Rule 37(d). We note that "failure to appear" for a deposition is strictly construed and Rule 37(d) sanctions apply only when a deponent "literally fails to show up for a deposition session." *Salahuddin,* 782 F.2d at 1131; *SEC v. Research Automation Corp.,* 521 F.2d 585, 588–89 (2d Cir. 1975); *see also* 4A Moore & Lucas, *supra,* ¶ 37.05, at 37–128 to 37–129.

committed a discovery violation, a party does not thereby forfeit the ordinary procedural prophylaxis of the Civil Rules. In the absence of a Rule 37(a) order or its functional equivalent, Ward's track record, though blemished, could not by itself animate Rule 37(b)(2).

■ Alternatively, the appellees say that the order issued in consequence of the scheduling conference (the Scheduling Order) was a suitable surrogate for a Rule 37(a) order. The appellees would have us infer from the sweeping generalities contained in the Scheduling Order an order compelling Ward to answer the exact questions posed at his deposition.[3] They cite particularly the Scheduling Order's general instructions on the scope of discovery:

THE COURT ORDERS plaintiff [sic] to state the names of all lines represented during 1987–1989, volume of purchases, purchase price and sales price per line, by November 16, 1989 (this date was subsequently changed by ORDER of this Court, to November 13, 1989). Plaintiff [sic] shall include its [sic] alleged loss of inventory (breakdown and description) and state sales, including volume, sales price, and dates.

Further, the plaintiffs shall describe all items of cost involved in the operation, including among others, cost of products, rent, direct labor, overhead, and equipment to arrive at a net; and it [sic] shall submit income tax returns covering years 1987–1989. The plaintiffs shall also state the method by which they allocate overhead, direct labor, etc., that come to be deducted from the sales of products as attributed to defendants' products, stating percentages as to allo-

cation of overhead to other products which plaintiffs sold.

The proposition that an order to answer specific deposition questions can be implied from such a blanket directive—a directive which does not mention the subject matter inquired into—is inconsistent with both the structure and language of Rule 37 and unsupported by any respectable authority. *See Salahuddin,* 782 F.2d at 1132; *GFI Computer Indus., Inc. v. Fry,* 476 F.2d 1, 3 (5th Cir.1973). Mindful of the "strong policy favoring disposition of cases on the merits," *Velazquez–Rivera,* 920 F.2d at 1075, we are especially reluctant to read a specific order by implication into such general language when the sanction sought is dismissal.

We need not paint the lily. Once the defendants eschewed the essential interim step exemplified by Rule 37(a), the gateway to utilizing Rule 37(b)(2) in respect to Ward's failure to answer a particular series of questions at his deposition was blocked. The district court therefore lacked legal authority to dismiss the case under the latter rule based on Ward's recalcitrance.

### B. *Document Production.*

Whether or not plaintiffs' failure to produce documents can legally serve as the basis for a Rule 37(b)(2) dismissal depends, once again, on whether the refusal was in defiance of a sufficiently explicit court order. There was no specific, freestanding order for production. In lieu thereof, the appellees argue once more that the Scheduling Order—in particular, the segment quoted *supra*—filled the bill.

■ Both sides agree that the plaintiffs complied to some extent with the general directive that they produce information relevant to the computation of damages.[4]

---

**3.** As a threshold matter, we note that, although the initial scheduling conference took place on October 27, 1989, the formal written Scheduling Order was not actually entered until December 13. The order was given verbally on October 27, however, and the parties from that point forward were duty bound not to ignore unambiguous commands clearly communicated by the presiding judge. *See Henry v. Sneiders,* 490 F.2d 315, 318 (9th Cir.) (where oral proceedings clearly require litigant to produce certain documents, absence of written order does not pre-

clude imposing default judgment for failure to comply), *cert. denied,* 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974). A litigant is not free to disobey an unambiguous discovery order of which he is on actual notice merely because the order has not yet been reduced to writing.

**4.** The documents produced on November 13 included the tax returns of both plaintiff corporations for previous fiscal years and certain purchase orders. On November 16 (the original deadline under the Scheduling Order), the plain-

In such a situation, we think that unless the failure of discovery is absolute, or nearly so, Rule 37(b)(2) sanctions are unripe. *See Badalamenti*, 896 F.2d at 1363; *Fox v. Studebaker–Worthington, Inc.*, 516 F.2d 989, 995 (8th Cir.1975); 8 Wright & Miller, *supra*, § 2291, at 809–10. More particularly, when a court issues a broad-form discovery order, and the party to whom it is addressed complies with it somewhat less than fully, withholding documents arguably outside the order's scope, the district court cannot dismiss without first entering an order commanding production of the specific materials.[5] In this instance, when one considers the court's last-minute shortening of the deadline, the documents produced on time or shortly after, and the plaintiffs' efforts to clarify their obligations, *see infra*, we do not believe that their compliance was so minimal as to constitute an outright failure to obey the dictates of the Scheduling Order. Thus, the court's resort to Rule 37(b)(2) was premature.

The defendants urge that a harsher result is warranted here, because the plaintiffs knew of the district court's interest in Impex and, consequently, the plaintiffs' failure to produce financial statements or tax returns regarding Impex was in flagrant disrespect of the Scheduling Order. The plaintiffs respond by pointing out that the Scheduling Order was, at best, oblique. They argue that until Welch's motion to dismiss was filed, they were confident that Impex was beyond the order's purview; that, thereafter, because of their uncertainty about whether Impex documents were meant to be encompassed by the Scheduling Order, they immediately requested a status conference with the court to clarify the scope of the still unwritten order; and that they only learned during a subsequent conference call that the court intended the order to reach the Impex documents.[6]

The district court, without elaboration, found appellants' claim that they misinterpreted the Scheduling Order to be "frivolous." *RWI I*, 129 F.R.D. at 31. The court wrote that, in the Scheduling Order, it

> ordered plaintiffs to produce all evidence and sources thereof affecting plaintiffs' alleged damages and all facts affecting costs be disclosed by plaintiffs in order to place defendants in a position to discover and prepare for trial. There cannot be any doubt that Impex's operations, as a subsidiary of plaintiff corporations, was an integral part of the operations of the whole. Impex was involved in some essential aspects of the purchase and sale of Welch's products. Therefore, disclosure of facts related to this operation was essential to determine plaintiffs' cost of operation and consequently their damages....
>
> If the Court were not to impose sanctions under the circumstances of this case, the [Civil Rules] dealing with discovery as well as the [Scheduling Order] used by this Court, would be like an empty "Parcha" shell without the juice. The [Scheduling Order] and the Federal Rules of Civil Procedure would be frequently ignored and ultimately trivialized.

*Id.* (citations omitted).

No contemporaneous record was made of the five-hour-long scheduling conference itself. Hence, our best guide is the written

---

tiffs submitted a damage report prepared for them by an international accounting firm. The plaintiffs had previously informed the court that the accountants would not be able to complete the report in time to comply with the accelerated timetable.

**5.** We stress that our present discussion is confined to Rule 37(b)(2) and does not purport either to limn or limit the other disciplinary weapons contained in the district court's armamentarium. Suffice it to say that if a document, albeit not specifically called for by an order for production, falls within the order's

fairly interpreted sweep, and without good cause is not produced, the district court is far from powerless. *See, e.g., Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 842–44 (9th Cir.1976).

**6.** The request for a status conference was made on December 8, 1989. The conference call took place within a week or two thereafter (the record does not specify the precise date). The plaintiffs produced the Impex documents on December 22 and 28, 1989, soon after they received the requested clarification. The dismissal order was entered on January 10, 1990.

Scheduling Order, *see Advance Financial Corp. v. Isla Rica Sales, Inc.,* 747 F.2d 21, 26 (1st Cir.1984) ("the district court speaks to [the court of appeals] primarily through its decrees")—and the words of that order are fraught with ambiguities. The Scheduling Order does not expressly direct production of financial information anent Impex. Although the court stated near the beginning of the order that it found Impex to be a "real party in interest," Impex was never joined as a plaintiff, and the actual discovery directive refers only to the plaintiffs. While the court apparently intended that the Scheduling Order reach the Impex documents, the fact remains that the Order's indefinite language could reasonably have been interpreted by the appellants not to include those papers.

More troubling still is the court's apparent belief that the obligation to produce Impex's financials was a necessary implication from the broad order that the plaintiffs provide all information related to their claimed damages. Even accepting the district court's factual findings with regard to both the intracorporate relationship and the importance of Impex-oriented information to a determination of plaintiffs' damages, we fail to see how a Rule 37(b)(2) sanction for plaintiffs' failure to produce specific documents can rest upon so general a directive. *Cf. Fox,* 516 F.2d at 995 ("a Rule 37(d) sanction is improper where a written response to a request to inspect documents is made but is not satisfactory");[7] *GFI Computer,* 476 F.2d at 3 (if interrogatory answers are evasive or imcomplete, a Rule 37(a) motion is the appropriate anodyne).

We think that there is a lesson to be learned from Fed.R.Civ.P. 34, the rule which, generally, governs a party's efforts to secure document production in a federal civil suit. The rule provides a detailed methodology for enforcement—a methodology which ties back into Rule 37(a).[8] That reference, of course, necessarily incorporates the preconditions already described as a prelude to Rule 37(b)(2) sanctions. If a general discovery directive could satisfy Rule 37(b)(2)'s requirement that a party must disobey "an order to provide or permit discovery" before his case can be dismissed thereunder, the carefully crafted prophylaxis of both Rule 34(b) and Rule 37 would be severely eroded and the way paved for case management *in terrorem.*

We applaud the district court's determination that the Civil Rules not be "trivialized," *RWI I,* 129 F.R.D. at 31, and its view that scheduling orders serve an important function in the systematic administration of cases, *id.* at 27. Nonetheless, laudable ends do not justify precipitate means. We are, therefore, disinclined to allow broad-brush scheduling orders to serve as snares whereby even innocent misunderstandings or inadvertent omissions may lead to summary dismissal. We are equally as reluctant to permit the pressing need for case management to undercut the orderly processes of Rule 37—a rule which is itself an important case management tool.

In fine, Rule 37 sets forth a clear path to be followed if a party believes that another litigant is not cooperating in the discovery process. When the plaintiffs failed to produce the Impex records—documents not

---

**7.** We recognize that in Rule 37(d) jurisprudence (other than in regard to failing to attend a deposition, *see supra* note 2), there are differences of opinion as to whether an award of sanctions is proper only where there has actually been a total failure to respond, *e.g., Fox,* 516 F.2d at 995; *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1339–40 (9th Cir.1985), or whether sanctions might be imposed where a response has eventuated, but is so flawed as to be tantamount to no response at all, *e.g., Airtex Corp. v. Shelley Radiant Ceiling Co.,* 536 F.2d 145, 155 (7th Cir.1976). Although the case before us does not implicate Rule 37(d), we find the situation analogous enough to be illuminated by this jurisprudence—particularly since it is clear that, even under the stricter view, were

Rule 37(d) in play, the response made by appellants here would suffice to forestall the imposition of sanctions under that rule.

**8.** Among other things, Rule 34 provides that requests for document production "shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity," Fed.R.Civ.P. 34(b); and that "[t]he party submitting the request *may move for an order under Rule 37(a)* with respect to any ... failure to respond to the request or any part thereof, or any failure to permit inspection as requested," *id.* (emphasis supplied).

specifically called for in the Scheduling Order—the defendants should have filed a motion to compel their production. That motion would have provided the court with the opportunity to clarify whether the Impex papers were encompassed in the Scheduling Order. Ancillary thereto, the court would have had the power, should it have found the failure to make production to be substantially unjustified, to award reasonable expenses, including attorneys' fees, to the movant(s). *See, e.g.,* Fed.R.Civ.P. 16(f), 37(a)(4). If, thereafter, the plaintiffs had refused to comply with the specific order for production, sanctions could appropriately have been imposed under Rule 37(b)(2). In the absence of a preexisting order to compel, however, the court had no authority under Rule 37(b)(2) to dismiss the case for plaintiffs' failure to proffer the Impex documents with greater celerity.[9]

### C. *Alternative Bases for Dismissal.*

■ Citing our holdings in such cases as *Fashion House, Inc. v. K Mart Corp.,* 892 F.2d 1076 (1st Cir.1989), and *Damiani v. Rhode Island Hosp.,* 704 F.2d 12 (1st Cir. 1983), the appellees argue that our review of the dismissal's appropriateness should focus not on a few discrete events, but rather on the plaintiffs' overall dilatory pattern of conduct and alleged abuses of the discovery process. We need not tarry in these precincts. Had the defendants taken the first step and secured a Rule 37(a) order or its equivalent, then the totality of the plaintiffs' conduct would justifiably weigh in the balance when the court selected a sanction for an ensuing violation of that order. Indeed, the cases cited by the appellees stand for this very proposition; in each of them, a specific discovery order was in effect and was thereafter violated. *See, e.g., Fashion House,* 892 F.2d at 1080 (order compelling responsive answers to interrogatories); *Damiani,* 704 F.2d at 13 (orders compelling answers to interrogatories and document production). Having found such a violation, we then looked to the rest of the record and considered the overall behavior of the guilty party to determine whether the particular sanction imposed by the lower court was just. *See Fashion House,* 892 F.2d at 1081–82 (preclusory order); *Damiani,* 704 F.2d at 16 (dismissal); *see also Spiller v. U.S.V. Laboratories, Inc.,* 842 F.2d 535, 537 (1st Cir.1988) (plaintiff's "history of foot-dragging" important in upholding Rule 37(b)(2) dismissal). These holdings are fully consistent with the proposition that an order must be in effect, and then violated, before the gears of Rule 37(b)(2) can be engaged.

■ While one appellee, Magna, concedes that Rules 11 and 16(f) cannot be used to shore up the dismissal order in this case, the other appellee, Welch, asserts that plaintiffs' violations of those rules justified the dismissal. The district court, however, wrote that resort to other rules, as a source of authority to dismiss, was "needless," choosing to "impose[ ] the sanction of dismissal under Rule 37(b)(2)." *RWI I,* 129 F.R.D. at 29. Thus, whatever the substantive merit of Welch's claims, we decline to address them, since the district court's order made it clear that Rule 37(b)(2) constituted the sole foundation on which the sanction of dismissal rested.[10]

■ Welch also chants a paean to the district court's "inherent powers." It is beyond question that a district court has inherent power to manage its affairs, including "the ability to do whatever is rea-

---

9. We emphasize that, had the district court purposed to dismiss for a violation of Rule 16(f), different considerations, with which we need not grapple today, would come to the fore.

10. In its opinion reconsidering and ultimately vacating Rule 11 sanctions, the district court did state, in dictum, that "Fed.R.Civ.P. 16(f), 37(b), and 41(b) provide adequate support for the dismissal and the imposition of reasonable costs and attorney's fees...." *RWI II,* 133 F.R.D. at 11. We read this statement in concert with the

judge's original order for dismissal under Rule 37(b), *RWI I,* 129 F.R.D. at 29, and the concomitant imposition of monetary sanctions under, *inter alia,* Rule 16(f), *id.* at 30–31. The reference to Rule 41(b) is, frankly, a puzzlement; the district court had gone to some pains in its earlier opinion to explain why Rule 41(b) was inapposite. *See id.* at 29 (citing and quoting *Societe Internationale v. Rogers,* 357 U.S. 197, 207, 78 S.Ct. 1087, 1093, 2 L.Ed.2d 1255 (1958)).

sonably necessary to deter abuse of the judicial process." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir.1989) (citation omitted). This innate power includes the authority to dismiss an action where a party's conduct egregiously abuses that process. *See id.; see also Chambers v. NASCO, Inc.*, —— U.S. ——, —— ——, 111 S.Ct. 2123, 2131–2138, 115 L.Ed.2d 27 (1991) (discussing federal court's inherent power to impose sanctions for litigation abuses in, *inter alia*, diversity cases). But here, the district court did not act under its inherent powers; to the contrary, the court was explicit in basing the sanction of dismissal on Rule 37(b)(2). Under such circumstances, we refuse to debate the entirely hypothetical question of whether the action might lawfully have been dismissed in the exercise of the court's inherent powers.

### III. CONCLUSION

We need go no further. Although the record in this case reveals lollygagging on appellants' part that a district court should not have to tolerate, two wrongs seldom make a right. Because no specific discovery order was in effect and thereafter violated by the plaintiffs, there was no foundation for dismissing the complaint under Rule 37(b)(2). As the court rested its order expressly and exclusively on that rule, we cannot let the dismissal stand. We leave the question of whether lesser sanctions should be imposed, consistent with Rule 37(a)(4), to the court below.

*The order of dismissal is reversed and the case remanded to the district court for further proceedings.*