985 F.2d 655
 24 Fed.R.Serv.3d 1357
 UNITED STATES of America, Plaintiff, Appellee,
v.
ONE 1987 BMW 325, Etc., Et Al., Defendants.
John Tenaglia, Claimant, Appellant.
 No. 92-1827.
 United States Court of Appeals,
First Circuit.
 Heard Dec. 8, 1992.
Decided Feb. 18, 1993.
 
 Thomas Kerner, for claimant, appellant.
 Michael J. Gunnison, Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., was on brief, for plaintiff, appellee.
 Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.
 SELYA, Circuit Judge.
 
 
 1
 This appeal arrives at our doorstep after meandering along the byways that link the Supplemental Rules for Certain Admiralty and Maritime Claims to the Federal Rules of Civil Procedure. We conclude that, given the way in which the Admiralty Rules and the Civil Rules intersect, the district court's order striking appellant's claim for failure to answer interrogatories was premature. Consequently, we reverse the order, vacate the judgment, and remand for further proceedings.
 
 I.
 Historical Prolegomenon
 
 2
 On March 27, 1991, police officer Sean Billert arrived at the scene of a two-car accident in North Conway, New Hampshire. One of the vehicles involved was a 1987 BMW operated by claimant-appellant John Tenaglia. In the course of a routine interview, Officer Billert caught the scent of burnt marijuana on Tenaglia's clothing. A search of the BMW revealed traces of marijuana and assorted drug paraphernalia. Authorities removed the car to a police compound and, during a further search, discovered $14,667 in used bills plus the key to a safe-deposit box. When opened, the box yielded an additional $16,000 in cash.
 
 
 3
 The State undertook to prosecute Tenaglia on a narcotics charge. Meanwhile, the federal government notified him that it planned to commandeer the cash and car. Toward that end, the government filed a forfeiture complaint in federal district court on July 3, 1991. See 21 U.S.C. § 881(a)(4), (a)(6) (1988). The complaint, festooned with ninety-nine interrogatories,[1] alleged that the cash represented the avails of narcotics trafficking; that the vehicle had been purchased with drug proceeds; and, moreover, that it had been used in furtherance of a drug-related crime.
 
 
 4
 Tenaglia received the forfeiture suit papers on August 9, 1991. He promptly filed a claim and an answer to the complaint but boycotted the interrogatories. On September 18, the government moved to strike the claim because the interrogatories remained unanswered. Tenaglia responded by requesting a stay of proceedings pending the outcome of the state criminal prosecution, or in the alternative, an order sealing the record in the forfeiture action so that any admissions could not be used against him. Tenaglia subsequently answered two of the interrogatories, contending that those answers, without more, sufficed to clarify his standing.
 
 
 5
 On May 12, 1992, the district court granted the government's longstanding motion to strike. The court ruled that Tenaglia, by failing to answer the interrogatories, had not perfected the right to prosecute his claim. The BMW and the cash were declared forfeit. This appeal ensued.
 
 
 6
 On appeal, Tenaglia argues that the lower court, for all intents and purposes, dismissed his claim in contravention of Fed.R.Civ.P. 37 (which, as Tenaglia reads it, does not permit dismissal as an initial sanction for failure to answer interrogatories).[2] The government counterattacks on three fronts. First, it asserts that, because Tenaglia did not adequately direct the district court's attention to Civil Rule 37 during the course of the proceedings below, he is precluded from relying on the rule at this juncture. Second, the government asserts that Civil Rule 37 is inapposite in respect to interrogatories propounded pursuant to Adm.R. C(6). Third, the government asserts that, even considering Civil Rule 37, the district court's order is supportable. We limn the appropriate standard of review and thereafter address Tenaglia's appeal by tracking the government's assertions.
 
 II.
 Standard of Review
 
 7
 It is within the trial court's fief to choose appropriate sanctions when a party does not comply with procedural rules. See Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1238 (1st Cir.1991) ("Considerable discretion is vested in a district judge to decide whether to impose sanctions and what form they should take."); Jensen v. Frank, 912 F.2d 517, 524 (1st Cir.1990) (similar); Damiani v. Rhode Island Hosp., 704 F.2d 12, 15 (1st Cir.1983) (similar). An appellate court must step softly in such precincts, taking pains not simply to substitute its judgment for that of the district court and intervening only if it is persuaded that the district court overspilled fairly wide discretionary bounds. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075 (1st Cir.1990); Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1081-82 (1st Cir.1989). All in all, a party protesting an order in respect to sanctions bears a formidable burden in attempting to convince the court of appeals that the lower court erred.
 
 
 8
 Deference, however, is not to be confused with automatic acquiescence. We will not rubber stamp sanction decisions entered in the district court. Media Duplication, 928 F.2d at 1238. Rather, in examining the imposition of sanctions for possible abuses of discretion, we focus our review particularly on whether a "material factor deserving significant weight [was] ignored," whether "an improper factor [was] relied upon," or whether "when all proper and no improper factors [were] assessed ... the court [made] a serious mistake in weighing them." Independent Oil & Chem. Workers, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir.1988) (collecting cases).
 
 III.
 Analysis
 A.
 Procedural Default
 
 9
 As a threshold matter, the government asserts that Tenaglia waived any reliance on Civil Rule 37 by failing to bring the rule to the attention of the district court. After carefully examining the record, we conclude that, on balance, Tenaglia presented the issue in a manner barely sufficient to put the theory in issue and thereby to avoid a procedural default.
 
 
 10
 To be sure, the question of waiver is borderline. Tenaglia did not confront the district court with chapter and verse anent the Rule 37 argument. Nonetheless, he did challenge the court's use of its discretion to dismiss in the first instance without prior adjudication of his generic objections to the wave of interrogatories; and on several occasions, he asked the court to consider the objections, meanwhile enlarging the time for responding to the interrogatories, before dismissing the claim. Tenaglia buttressed this point by citing cases in which orders compelling discovery preceded dismissal. See, e.g., United States v. One 1971 Corvette Stingray, Etc., No. 89-5398, 1989 WL 153951, 1989 U.S. Dist. LEXIS 15079 (E.D.Pa. Dec. 14, 1989).
 
 
 11
 In fine, while Tenaglia's proffer was by no means a paradigm of lucidity, neither did it require the district court to sift an ocean of prose for a seashell's worth of reasoning. In some cases, perhaps, these meager efforts would not serve. But, in assessing the adequacy of Tenaglia's proffer, we are keenly aware that "dismissal with prejudice is a harsh sanction which runs counter to our strong policy favoring the disposition of cases on the merits." Figueroa Ruiz v. Alegria, 896 F.2d 645, 647 (1st Cir.1990) (internal quotation marks and citation omitted); accord Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10 (1st Cir.1991); Velazquez-Rivera, 920 F.2d at 1075. We are mindful, too, that forfeiture is a harsh medium and that the disposition-on-the-merits policy is, therefore, particularly potent here. See United States v. 384-390 West Broadway, 964 F.2d 1244, 1248 (1st Cir.1992) (recognizing that "forfeitures are strong medicine, disfavored in our jurisprudence"); United States v. $38,000 in U.S. Currency, 816 F.2d 1538, 1547 (11th Cir.1987) (collecting cases); cf. United States v. 1 Street A-1, 885 F.2d 994, 1001 (1st Cir.1989) (acknowledging, in a forfeiture context, that "to the greatest extent possible controversies are [to be] decided on the merits" and therefore excusing potential procedural default). And, finally, given the surge in attempted forfeitures, the importance of the issue for future cases is itself a factor cutting sharply in favor of resolving it here and now. Cf. United States v. La Guardia, 902 F.2d 1010, 1013 (1st Cir.1990) (excusing procedural default and considering purely legal issue not raised below where the issue was significant and likely to recur, such that addressing it would advance the administration of justice); United States v. Krynicki, 689 F.2d 289, 292 (1st Cir.1982) (similar). Considering the nature and circumstances of this case, we conclude that the argument regarding the necessity of an intervening court order before dismissal for failure to make discovery was sufficiently raised below.
 
 B.
 
 12
 The Interplay Between the Two Sets of Rules
 
 
 13
 In 1966, Congress abolished the former Rules of Practice in Admiralty and Maritime Cases and replaced them with the Supplemental Rules for Certain Admiralty and Maritime Claims. The scope of the new rules belied their title because they extended beyond maritime actions to actions in rem, see Adm.R. A(2), C, and, in particular, to forfeiture actions. See, e.g., 21 U.S.C. § 881(b). In minting the Admiralty Rules, however, Congress did not completely remove in rem proceedings from the purview of the Civil Rules.[3] Rather, Congress decreed that:
 
 
 14
 The general Rules of Civil Procedure for the United States District Courts are also applicable to [in rem] proceedings except to the extent that they are inconsistent with these Supplemental Rules.
 
 
 15
 Adm.R.A.
 
 
 16
 Pursuant to this direction, we have consistently looked to the Civil Rules to fill gaps in the Admiralty Rules. See, e.g., 384-390 West Broadway, 964 F.2d at 1247 n. 4 (explaining that "[r]esort ... may be had to the Federal Rules of Civil Procedure for interstitial matters or where the Admiralty Rules are silent ..."); United States v. 116 Emerson St., 942 F.2d 74, 77 (1st Cir.1991) (similar); In re Northern Transatlantic Carriers Corp., 423 F.2d 139, 140 (1st Cir.1970) (holding that "[a]ll civil rules, except where impertinent," apply in admiralty cases); see also 1 Street A-1, 885 F.2d at 998 & n. 13 (applying Fed.R.Civ.P. 4 in forfeiture suit); United States v. $149,345 U.S. Currency, 747 F.2d 1278, 1280, 1281 (9th Cir.1984) (applying Fed.R.Civ.P. 37 and 60 in forfeiture suit); cf. $38,000 in U.S. Currency, 816 F.2d at 1547 n. 20 (noting general applicability of Civil Rules to forfeiture actions but rejecting specific application of Fed.R.Civ.P. 12(f) as inconsistent with Adm.R. E(2)); United States v. $39,000 in Canadian Currency, 801 F.2d 1210, 1216 (10th Cir.1986) (similar).
 
 
 17
 Admiralty Rule C provides an abecedarian roadmap for the travel of forfeiture proceedings. An action is initiated by the filing of a sworn complaint. Adm.R. C(2). Persons claiming an interest in the targeted property have ten days within which to file a claim and twenty days thereafter within which to file a sworn answer, together with "answers to any interrogatories served with the complaint." Adm.R. C(6). However, the Admiralty Rules are completely bereft of guidance concerning what measures may be appropriate when parties fail to serve answers to interrogatories in a full and timely fashion. This deficiency is part of a larger pattern; read in their entirety, the Admiralty Rules make no provision whatever for discovery sanctions.
 
 
 18
 In light of the Admiralty Rules' opacity on this subject, Adm.R. A directs our attention to the Civil Rules and, in particular, to Fed.R.Civ.P. 37.[4] The government seemingly concedes that Civil Rule 37 requires that a court order specifically compelling answers to interrogatories be entered, and then transgressed, before dismissal can ensue. The rule does, indeed, operate in that manner.[5] See R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 15 (1st Cir.1991) (collecting cases).
 
 
 19
 The next question is whether, as the government asserts, the quoted portion of Civil Rule 37 is antagonistic to some provision of the Admiralty Rules. The government hypothesizes such a clash between Civil Rule 37 and Adm.R. C(6) by reading the latter rule as allowing dismissal in the first instance if interrogatories are served thereunder and then ignored. But, the government offers no case law supportive of this curious interpretation. It relies entirely on forfeiture cases in which courts have from time to time struck untimely claims to targeted property. See, e.g., United States v. One Dairy Farm, 918 F.2d 310, 311 (1st Cir.1990). Such cases are inapposite. For one thing, the Civil Rules, like the Admiralty Rules, have uniformly been interpreted as empowering courts to strike late-filed pleadings. See, e.g., Fantasy, Inc. v. Fogerty, 664 F.Supp. 1345, 1347-48 (N.D.Cal.1987). The same does not hold true for delayed discovery. The Admiralty Rules, as we have said, are silent on this topic, and the Civil Rules contain specific provisions for a progression of remedies if a court encounters footdragging in the answering of interrogatories. For another thing, the reason for strictly enforcing timeliness requirements anent the filing of claims is "to force claimants to come forward as soon as possible after forfeiture proceedings have begun." 116 Emerson St., 942 F.2d at 77 (quoting 1 Street A-1, 885 F.2d at 1001). Once all the parties are before the court, different considerations obtain. At that juncture, the measured procedure crafted by Fed.R.Civ.P. 37, which balances the interest in full and prompt discovery against the presumption that disputes should be resolved on the merits, seems a far more suitable instrument.
 
 
 20
 To sum up, the Admiralty Rules provide for discovery via interrogatories--but they provide no internalized mechanism for handling a party's failure to answer interrogatories fully and/or punctually. Given the imperative of Adm.R. A and the great similarity in language between Adm.R. C(6) and Fed.R.Civ.P. 33,[6] it seems natural to look to Civil Rule 37 to fill the hole in the Admiralty Rules' interrogatory provisions. Civil Rule 37 provides what the Admiralty Rules do not: a mechanism for addressing failures to cooperate in discovery. Discerning no hint of inconsistency, we hold that the use of discovery sanctions in forfeiture actions is properly governed by the pertinent provisions of the Federal Rules of Civil Procedure. Accordingly, the imposition of sanctions for a claimant's failure or refusal to answer interrogatories in a forfeiture case must be judged under the jurisprudence of Civil Rule 37.
 
 C.
 
 21
 The Propriety of the District Court's Order
 
 
 22
 We turn last to the question of whether the district court's order in this case was within the bounds of its discretion. In this regard, the government hangs the case for affirmance on two hooks. First, the government tells us that the order met the requirements of Fed.R.Civ.P. 37. Next, the government argues in the alternative that the district court had inherent power to order a dismissal here. We address these points in order.
 
 
 23
 1. The Rule 37 Framework. Civil Rule 37 erects a two-tiered framework for addressing a litigant's failure to cooperate in discovery. First, the party propounding interrogatories must seek a court order compelling discovery. It is only if the offending party refuses to comply with such an order that the court may choose a sanction as stern as dismissing the action or striking the offender's pleadings. See Fed.R.Civ.P. 37(b)(2), (d). Thus, Civil Rule 37 does not permit the district court to jump directly to the most dire sanctions without essaying an intermediate first step. To the contrary, Rule 37's "language clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before the enumerated sanctions can be imposed." R.W. Int'l, 937 F.2d at 15 (collecting cases).[7]
 
 
 24
 This case aptly illustrates the value of the two-stage process: a motion to compel would have given the court an opportunity to address Tenaglia's Fifth Amendment and relevancy concerns, to enter an order fixing a firm date for compliance, and, if necessary, to punish Tenaglia's dilatory conduct by awarding counsel fees and costs. See Fed.R.Civ.P. 37(a)(4). If Tenaglia then persisted in giving a cold shoulder to the compliance date, the court would be in a position to exercise its discretion in choosing an appropriate sanction from those provided in Rule 37(b), including dismissal.
 
 
 25
 Here, neither of the precedent conditions was met. Instead, the government tried a shortcut, moving to strike Tenaglia's claim for failure to comply with Adm.R. C(6) without first seeking to compel responses to the interrogatories and without making the slightest effort to observe Fed.R.Civ.P. 37's procedural strictures. Seven months after the government filed its motion, the district court adopted the government's reasoning in large part, concluding that Tenaglia "lack[ed] the standing to contest the forfeiture at issue" because he had failed to answer the interrogatories. Based on that conclusion, the court struck the claim without first entering a discovery order and subsequently witnessing its breach, as Rule 37 requires. In failing to account for this factor, the district court overstepped its discretion when it struck Tenaglia's claim in the first instance.[8] See Aggarwal v. Ponce Sch. of Medicine, 745 F.2d 723, 727 (1st Cir.1984) ("The cask which encases a judge's discretion, though commodious, can be shattered when ... the trial court misconceived or misapplied the law....").
 
 
 26
 2. Inherent Powers. In an effort to dodge the operation of Civil Rule 37, the government argues that, in any event, no reference to the Civil Rules is exigible because the courts can use inherent powers to deal appropriately with procedural problems on a case-by-case basis. Although it is true that a district court possesses the inherent power to dismiss an action where there has been an egregious abuse of process, see, e.g., Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118-19 (1st Cir.1989) (holding that the district court possessed inherent power to dismiss the complaint after discovery of plaintiff's ongoing fraud on the court); cf. Chambers v. NASCO, Inc., --- U.S. ----, ----, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) ("outright dismissal of a lawsuit ... is a particularly severe sanction, yet is within the court's discretion") (citation omitted), we see no evidence here of such straitened circumstances.
 
 
 27
 Furthermore, there are limits to a court's inherent powers, particularly in instances where the Civil Rules are on all fours. When, as in this case, the Civil Rules limit the nature of the sanction that can be imposed, a court may not use its inherent powers to circumvent the Rules' specific provisions. See Bank of Nova Scotia v. United States, 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988) (holding that a court cannot rely on supervisory power to avoid the clear mandate of a procedural rule); cf. Chambers, --- U.S. at ----, 111 S.Ct. at 2136 (allowing use of inherent powers where Civil Rules did not limit the nature of the sanction which could be imposed). Consequently, even where district courts have invoked their inherent powers to dismiss an action, the dismissal has typically followed the violation of a preexisting court order. See, e.g., Figueroa Ruiz, 896 F.2d at 648.
 
 
 28
 We note, moreover, that the court below expressly relied on Adm.R. C(6) and did not purport to invoke--or even mention--its inherent powers. Under these circumstances, we are disinclined to rummage through the record searching for a likely unusable needle in a haystack never explored by the trial court. Doing so would be injudicious and, to our way of thinking, would needlessly threaten the delicate balance struck by Civil Rule 37. See Bank of Nova Scotia, 487 U.S. at 255, 108 S.Ct. at 2373 ("The balance struck by the Rule ... may not casually be overlooked 'because a court has elected to analyze the question under the supervisory power.' ") (quoting United States v. Payner, 447 U.S. 727, 736, 100 S.Ct. 2439, 2446, 65 L.Ed.2d 468 (1980)); see also R.W. Int'l, 937 F.2d at 20 (refusing "to debate the entirely hypothetical question of whether the action might lawfully have been dismissed in the exercise of the court's inherent powers").
 
 IV.
 Conclusion
 
 29
 We need go no further.[9] Because the Admiralty Rules contain no inconsistent provisions, Civil Rule 37 provides the appropriate mechanism to which parties who find their discovery stalled in forfeiture cases must resort. And, because the district court failed to abide by the analytic strictures of Fed.R.Civ.P. 37 when exercising its discretion here, its order and judgment cannot stand.
 
 
 30
 The order striking appellant's claim is reversed, the judgment below is vacated, the claim is reinstated, and the case is remanded to the district court for further proceedings. No costs.
 
 
 
 [1]
 The interrogatories were served with the complaint pursuant to Adm. Rule C(6), which provides in pertinent part:
 The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed.... At the time of answering the claimant shall also serve answers to any interrogatories served with the complaint. In actions in rem interrogatories may be so served without leave of court.
 
 
 [2]
 The district court, technically speaking, struck Tenaglia's claim, as opposed to dismissing it. We think, however, that this is a distinction bereft of any meaningful difference. Although in many cases the upshot of dismissal is more grievous than the upshot of an order to strike, dismissal and the striking of a claim are quintessentially synonymous in the forfeiture context. This is so because either order results in the failure of the entire claim. See United States v. Contents of Accounts Nos. 3034504504 and 14407143, Etc., 971 F.2d 974, 978 & n. 3 (3d Cir.1992), petition for cert. filed (Jan. 6, 1993). Thus, we treat the district court's order to strike Tenaglia's entire claim as the functional equivalent of a dismissal order. We note, moreover, that under Fed.R.Civ.P. 37, neither dismissal nor striking of a pleading is a permissible sanction for a delay in making discovery unless the offending party first violates a preexisting court order
 
 
 [3]
 The Court made it very clear that the former admiralty rules were not meant to be comprehensive codes regulating every aspect and detail of federal court practice in cases to which they applied. See Miner v. Atlass, 363 U.S. 641, 648, 80 S.Ct. 1300, 1304, 4 L.Ed.2d 1462 (1960). We are confident that the new admiralty rules share this characteristic
 
 
 [4]
 Fed.R.Civ.P. 37 is entitled "Failure to Make or Cooperate in Discovery: Sanctions." It is the rule to which federal courts must resort in addressing a litigant's noncompliance with Fed.R.Civ.P. 33 (entitled "Interrogatories to Parties")
 
 
 [5]
 Of particular pertinence here is the rule's admonition that:
 If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
 ....
 (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....
 Fed.R.Civ.P. 37(b)(2).
 
 
 [6]
 Except for the fact that Adm.R. C(6) allows the government first crack at propounding interrogatories, it tracks the prescriptive language of Fed.R.Civ.P. 33
 
 
 [7]
 We think this holding is altogether consistent with the Ninth Circuit's position in $149,345 U.S. Currency, 747 F.2d at 1280--although there, a fresh order to compel was unnecessary because of the res judicata effect of an order to compel entered in an earlier case. See id
 
 
 [8]
 In point of fact, because the government never moved to compel Tenaglia's compliance, the court had no discretion under Rule 37 to strike Tenaglia's claim for failure to make due discovery
 
 
 [9]
 Tenaglia requests that we direct the district court to issue a protective order enabling him simultaneously to answer the interrogatories and protect his Fifth Amendment rights. We believe that this is a matter to be considered ab initio in the trial court and Tenaglia is, of course, free to raise it on remand