US v. Currency                          CV-00-378-B    11/16/00

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**United States of America**

    **v.**                                              Civil No. 00-378-B
                                                 Opinion No. 2000DNH242
**$230,963.88 in United States**
**Currency, More or Less, et al.**


## MEMORANDUM AND ORDER

In this civil forfeiture action, no potential claimants to the defendants-in-rem responded to the government's complaint prior to the filing deadline.  Accordingly, the government filed a motion for an entry of default, (Doc. No. 4).  Carol DeFrancesco subsequently filed: (1) a motion to allow the filing of a tardy claim and answer, (Doc. No. 6); and (2) an objection to the government's motion for an entry of default, (Doc. No. 5). Because I conclude that the failure of DeFrancesco's counsel to file a claim and answer in a timely manner does not constitute "excusable neglect," I deny her motion and grant the government's motion for an entry of default.

# I.  BACKGROUND

On November 6, 1998, agents of the Internal Revenue Service and the Pelham, New Hampshire police department seized the defendants-in-rem.[1]  At the time of seizure, the agents believed that the defendants-in-rem were involved in money laundering transactions, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and were used in an illegal gambling business, in violation of 18 U.S.C. § 1955(a).  Accordingly, the defendants-in-rem were subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 1955(d).

On August 4, 2000, the government filed a verified complaint and arrest warrant against the defendants-in-rem.  On that same day, copies of the complaint and arrest warrant were mailed to counsel for two known potential claimants, including Peter Grillo, Esq., counsel for potential claimant Carol DeFrancesco. The government subsequently published legal notice of the seizure in The Manchester Union Leader.

---

[1]  The defendants-in-rem primarily consist of United States currency, including both paper money and coins.

On August 30, 2000, Kimberly Cooper, a paralegal specialist with the United States Attorney's Office, contacted Grillo. After confirming that Grillo had received the complaint and warrant, Cooper advised Grillo that the time period for responding to the complaint began to run from the time of receipt.[2] Cooper also told Grillo that the government would not object if he requested an extension of time to respond to the complaint.

Grillo did not file a request for an extension of time. Similarly, Grillo did not file a claim against the seized property or an answer to the complaint within the time allotted.

_____

[2] In rem forfeiture actions pursuant to 18 U.S.C. § 981(a)(1)(A) are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules"). See 18 U.S.C. § 981(b)(2). Supplemental Rule C(6) provides that a claimant of property that is the subject of a forfeiture action must: (1) file a claim on the property within 10 days after process has been executed, or within such additional time as may be allowed by the court; and (2) serve an answer to the complaint within 20 days after filing the claim. See Supplemental Rule C(6). A party that fails to file a claim pursuant to Supplemental Rule C(6) normally lacks standing to contest forfeiture of the property. United States v. Approximately 2,538.85 Shares of Stock, 988 F.2d 1281, 1284 (1st Cir. 1993).

The government subsequently filed the instant motion for an entry of default. Grillo, on behalf of DeFrancesco, responded with the instant motions.

## II.  DISCUSSION

### A.  The Late Claim and Answer

Grillo asserts that he should be allowed to file a claim and answer on behalf of his client even though the filing deadlines imposed by Supplemental Rule C(6) have lapsed. Although not invoked by Grillo, Federal Rule of Civil Procedure 6(b) provides, in relevant part, as follows:

> "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."[3]

---

[3] Rule 6(b) applies because the general Federal Rules of Civil Procedure apply to in rem actions except to the extent that they are inconsistent with the Supplemental Rules. Supplemental Rule A; see United States v. One 1987 BMW 325, 985 F.2d 655, 658-59 (1st Cir. 1993); United States v. Contents of Account No. 901121707, 36 F. Supp. 2d 614, 616-18 (S.D.N.Y. 1999).

-4-

A court must take into account all relevant circumstances surrounding a movant's failure to comply with a filing deadline in order to determine whether the movant's failure constituted excusable neglect under Rule 6(b). See Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 395 (1993).[4] Those circumstances include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether the delay was in the reasonable control of the movant; and (4) whether the movant acted in good faith. Id. In essence, Pioneer suggests that a movant, seeking to file after a deadline has passed, "must demonstrate unique or extraordinary circumstances." Mirpuri, 212 F.3d at 631.

---

[4] Although Pioneer discussed the definition of "excusable neglect" as used in Bankruptcy Rule 9006(b)(1), the First Circuit subsequently stated that "Pioneer must be understood to provide guidance outside the bankruptcy context." Pratt v. Philbrook, 109 F.3d 18, 19 (1st Cir. 1997) (interpreting "excusable neglect" as used in Fed. R. Civ. P. 60(b)); see Mirpuri v. Act Mfg., Inc., 212 F.3d 624, 630-31 (1st Cir. 2000) (applying Pioneer to Fed. R. App. P. 4(a)(5)); see also 44 Liquormart, Inc. v. Rhode Island, 940 F. Supp. 437, 439-44 (D.R.I. 1996) (applying Pioneer to Fed. R. Civ. P. 6(b)).

In evaluating the relevant circumstances, I note that while excusable neglect is a somewhat elastic concept, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect." Pioneer, 507 U.S. at 392 (citations and internal quotations omitted).

1. Prejudice and Delay

In this case, the danger of prejudice to the government, due to, for example, potential loss of evidence, is minimal. See Pratt, 109 F.3d at 22. The mere likelihood that the government would not be able to obtain an entry of default is not cognizable prejudice for purposes of a Rule 6(b) inquiry. See id. Similarly, while allowing Grillo to file his client's motions would cause delay in that it would prevent the entry of default, such delay does not factor into the Rule 6(b) equation.

2. The Reason for the Delay

Grillo asserts that he failed to file his client's claim and answer in a timely manner because he lacked authority from his client to do so. Assuming that this assertion is true, it does

not explain Grillo's failure to file a motion to extend the filing deadline. This failure is especially troubling given that the government had said it would consent to such a motion.

Grillo's only explanation for his failure to file for an extension is that he did "not recall any time limit being imposed" by the United States Attorney's Office. Def.'s Mot. to Allow the Filing of Claim and Answer Late, (Doc. No. 6), ¶ 3. This argument suggests either: (1) that Grillo was ignorant of the Supplemental Rule C(6) deadlines; or (2) that Grillo was under the impression that the government would wait indefinitely for Grillo to file his client's claim and answer. The facts of this case do not support either of these two hypotheticals.

First, I note that Grillo received a copy of the complaint, which referenced 18 U.S.C. § 981. A careful look at § 981 would have alerted Grillo to the fact that the defendants-in-rem were subject to forfeiture under § 981 and that forfeitures under that statute are subject to the filing deadlines set forth in the Supplemental Rules, specifically Supplemental Rule C(6). See 18

U.S.C. § 981(b)(2) (referencing the Supplemental Rules).

Second, Grillo received a copy of the warrant for the arrest of the defendants-in-rem. The text of the three page warrant clearly spells out his obligation under Supplemental Rule C(6) to file a claim within ten days and to file an answer to the complaint within twenty days after filing a claim. In addition, at the bottom of page two of the warrant, set off from the body of the text, is the following notice:

> "NOTE: Claimant is required to file claim in the Clerk's office and to answer or except to said complaint with the times above fixed; otherwise, the plaintiff may enter an interlocutory of final judgment as may be appropriate." (emphasis in original).

Third, Grillo spoke with the United States Attorney's Office who apparently told him that the filing deadline for his client's response to the complaint had started to run when he received a copy of the complaint.

Given the facts above, it is clear that Grillo had notice of the filing deadlines imposed by Supplemental Rule C(6). It defies logic to suggest that, in the face of these clear

-8-

deadlines, the United States Attorney's Office would wait indefinitely for Grillo's response to its complaint.

In the end, Grillo made no attempt to preserve the rights of his client by filing for an extension. See <u>United States v. One Dairy Farm</u>, 918 F.2d 310, 312 (1st Cir. 1990). Instead, Grillo simply ignored the filing deadlines imposed by Supplemental Rule C(6). See <u>Pioneer</u>, 507 U.S. at 387-88 (choosing to flout a deadline is not excusable neglect).

### 3. The Movant's Good Faith

Finally, it is unclear whether Grillo acted in good faith. If, however, Grillo honestly believed that there was, in effect, no deadline as to when he could file a response to the government's complaint, such a belief suggests that he was completely ignorant of the relevant rules of procedure. See <u>Contents of Account No. 901121707</u>, 36 F. Supp. 2d at 616-18 (finding no "excusable neglect" where claimant's attorney, who had notice of the forfeiture, claimed ignorance of Supplemental Rule C(6)); <u>see also Advanced Estimating System, Inc. v. Riney</u>,

130 F.3d 996, 998 (11th Cir. 1997) (citing cases and holding that "an attorney's misunderstanding of the plain language of a rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline").

4.  Conclusion

In weighing the relevant circumstances in this case, I confront two conflicting premises.  On the one hand, forfeiture is a harsh medium, and therefore it is generally preferable that such cases be decided on their merits.  One 1987 BMW 325, 985 F.2d at 658.  On the other hand, "the law ministers to the vigilant not to those who sleep upon perceptible rights."  Puleio v. Vose, 830 F.2d 1197, 1203 (1st Cir. 1987).

The filing deadlines set forth in Supplemental Rule C(6) exist to "force claimants to come forward as soon as possible after forfeiture proceedings have begun and to prevent false claims."  United States v. One Urban Lot, 885 F.2d 994, 1001 (1st Cir. 1989).  For that reason, courts have generally "required

-10-

strict adherence to [Supplemental] Rule C(6)." One Dairy Farm, 918 F.2d at 312 (collecting cases). Whatever sympathy DeFrancesco's plight might generate, "sympathy alone does not suffice to require the district judge to disregard [her] complete failure to abide by the command of [Supplemental] Rule C(6)." One Urban Lot, 885 F.2d at 999.

After weighing all the relevant circumstances, I conclude that Grillo fails to demonstrate unique or extraordinary circumstances that would justify a finding of excusable neglect. See Mirpuri, 212 F.3d at 631. Supplemental Rule C(6) provided Grillo with an easy opportunity to apply for an extension, but he chose to ignore it. See One Dairy Farm, 918 F.2d at 312. A party confronted by a filing deadline cannot allow the time to lapse and then try to resurrect her rights simply by claiming ignorance. See Witty v. Dukakis, 3 F.3d 517, 520 (1st Cir. 1993). If that were the case, every attorney could feign ignorance, and the deadlines would effectively cease to exist. See Advanced Estimating Sys., Inc., 130 F.3d at 998.

Simply put, Grillo's failure to abide by the clear, unambiguous filing deadlines of which he had actual notice does not constitute excusable neglect. See Pioneer, 507 U.S. at 387-88; Contents of Account No. 901121707, 36 F. Supp. 2d at 616-18. Accordingly, I deny DeFrancesco's motion to file a late claim and answer, (Doc. No. 6), and I will not consider her late-filed documents in evaluating the government's motion for an entry of default.

B.   **The Motion for an Entry of Default**[5]

Federal Rule of Civil Procedure 55(a) reads as follows:

> "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

In its verified motion, the government seeks an entry of default

---

[5]   The government captions its motion as one for "default judgment," but it invokes Rule 55(a), which governs "entry of default" by the Clerk of the Court. An entry of default by the Clerk is a prerequisite to a default judgment. See Johnson v. Dayton Electric Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998). Accordingly, I construe the government's motion as requesting an entry of default.

against all potential claimants to the defendants-in-rem because no such claimants have responded to the government's complaint within the time allotted by Supplemental Rule C(6). See One Dairy Farm, 918 F.2d at 312. Based on the government's motion, it appears that the requirements of 55(a) have been met. Accordingly, I grant the government's motion.

## III.  CONCLUSION

For the foregoing reasons, I deny defendant's motion to file a late claim and answer, (Doc. No. 6), and grant the government's motion for an entry of default, (Doc. No. 4). Accordingly, the Clerk is hereby ordered to enter a default against the defendants.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

November      , 2000

cc:  Jean B. Weld, Esq.
     Peter V. Grillo, Esq.